FILED
CLERK

2:14 pm, Mar 22, 2021
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
STAR AUTO SALES OF QUEENS LLC,: 19-cv-06791-RPK-ST
        Plaintiff,   :
                :
   - versus -     : U.S. Courthouse
                : Central Islip, New York
                :
                :
ISKANDER, et al.,     : December 4, 2020
        Defendants  : 3:30 PM
------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
BEFORE THE HONORABLE STEVEN TISCIONE
UNITED STATES MAGISTRATE JUDGE

**A**    **P**    **P**    **E**    **A**    **R**    **A**    **N**    **C**    **E**    **S:**

**For the Plaintiff:**     **Jamie Scott Felsen, Esq.**
                       **Jeremy Koufakis, Esq.**
                       Milman Labuda Law Group PLLC
                       3000 Marcus Avenue
                       Suite 3w8
                       Lake Success, NY 11042

**For the Defendant:**     **John Alexander, pro se**

**Transcription Service:**   **Transcriptions Plus II, Inc.**
                       61 Beatrice Avenue
                       West Islip, New York 11795
                       laferrara44@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE COURT:  Star Auto Sales of Queens v.
2    Iskander, et al.
3          Counsel, please state your appearances for the
4    record.
5          MR. ALEXANDER:  John Alexander.
6          MR. FELSEN:  Jamie Felsen and Jeremy Koufakis
7    for the plaintiffs.
8          THE COURT:  All right.  And you said John
9    Alexander?
10          MR. ALEXANDER:  Yes.
11          THE COURT:  That's -- sorry, that's the same --
12    you're listed in the indictment as Hanie Iskander.  Is it
13    Alexander?  Is that how we should refer to you, Mr.
14    Alexander?
15          MR. ALEXANDER:  I'm sorry, say it again.
16          THE COURT:  The complaint lists your name as
17    Hanie Iskander.  Is John Alexander --
18          MR. ALEXANDER:  Yeah, this is my previous name
19    before I get American citizen.  So I changed my name, but
20    I called, when I get my American citizen, John Alexander
21    is my name.
22          THE COURT:  Okay.  Okay.  Fair enough.  So I'm
23    looking through this motion to compel and there's a large
24    category of things that they're asking for and some of it
25    -- it sounds like you are claiming you don't have.  I'm

3

Proceedings

1  just trying to see what's actually outstanding and what

2  don't you have.  You want a copy of the driver's license,

3  is that what about?

4           MR. FELSEN:  Yes, your Honor.  He's got on --

5  there's been various names he's used and we want to know

6  what name is on his driver's license.

7           MR. ALEXANDER:  With all respect, Judge, those

8  -- those guys have -- have everything about me.  They

9  send their private investigator here and their file has

10  all my documents, all my I.D. card, all my -- my -- even

11  court records from here, from Florida and they have also

12  go around town asking about me, all they can and they

13  made me sign a consent that I have nothing to do with

14  this and I have given them all the information they

15  needed and they also propose to me that they wanted only

16  to get Douglas in trouble by having me answer some

17  question.  I refused that.

18           And the thing is that they not honest about

19  what they want and I have nothing to do with Star Subaru

20  at all and also they keep changing their question all the

21  time and even last time, he asked me a copy of things he

22  give me, like a copy of a bank statement that's not

23  related to me, money they paid for Douglas, not for me.

24           So the thing is they -- they confused with

25  their own person, I'm sure.  That's all.  I -- I've only

4

Proceedings

1  done business and I repeat this with (indiscernible)

2  Plaza as sports -- Motorsports advertising and I never

3  deal directly with Star Subaru.

4           He asked me to design a piece of mailer, I

5  design it and I send it to mail, that's all that I do,

6  nothing else.

7           MR. FELSEN:  Your Honor, this is just a repeat

8  of the last conference we had before you.  You know, we

9  have the right to engage in discovery.  We conducted a

10 deposition last time we were before you.  We told you

11 that we asked for certain things at the deposition and he

12 hadn't produced it.  You directed him to respond to our

13 requests and now we had to come back to you because he

14 didn't sufficiently respond.

15          You know, his defense really has nothing to do

16 with his obligation to engage in discovery.

17          MR. ALEXANDER:  No, sir, that's not correct.

18 The judge have instructed you get all the information

19 from the internet last time.  When you asked for thing,

20 because you can get it from the internet, like the

21 website or so on.  Website is not a document, website is

22 advertising.  So you feel free to get that information.

23          You went to hack my account.  You get my back

24 statement.  You went to also the Court to get all the

25 document about me.  I have all my driver's license copy

5

Proceedings

1   with your private investigator to take -- pounding on my

2   door with no rights and I let them in as a polite person.

3   I could -- I could not refuse to speak to him but I did

4   deal with them because I have no idea I have done

5   anything wrong.

6           I only dealt with Douglas as a vendor.  So I

7   think you just -- you are wasting my time and your time

8   by hitting on the wrong person and I hope you -- that you

9   appreciate that I'm responding you politely all the time

10  and I'm giving you information.

11          There are things that I don't have time to do

12  because it's not related to me and all the documents you

13  asked me for, I have no idea about it.  I give us all

14  this information and I have no copy of it.  I end my

15  business 2017 and I have (indiscernible) transfer back --

16  back history.  All the history are with Douglas,

17  delivered to the person we done business with immediately

18  when he asked for, all invoices he has.

19          So you should go back to Douglas, which is he

20  worked for the company and do that and ask for this.

21  You're asking the wrong person.

22          THE COURT:  All right.  So let's just go step-

23  by-step through these.  Your driver's license, you can

24  give them, just give them a copy of your driver's

25  license.

6

Proceedings

1          The document you are reviewing bearing your

2    deposition that has New Visions Advertising clients?

3          MR. ALEXANDER:  What document?

4          MR. FELSEN:  Yes.  So your Honor, we did a

5    deposition via Zoom and Mr. Alexander was referring to

6    some document that he had in front of him.

7          MR. KOUFAKIS:  Holding it.

8          MR. FELSEN:  He was holding it on the screen

9    and we simply -- and he was reading off purported clients

10   of his, the names of them and we would like a copy of

11   that document that he was referring to through the --

12   during the deposition.

13          MR. ALEXANDER:  These are on the website, what

14   you're asking -- these are all -- everything that you

15   show is on the website which is you have went through to

16   have a -- and you have a copy of each page.  So you're

17   asking for things you already have.  I don't know what --

18   what's going on.  You're asking for things you already

19   have.  You're asking for my -- my accounts, my history

20   and it's already on the website.  I never even erased it,

21   although I'm -- I'm not in business because I'm keeping

22   the email.

23          So I think your question irritated me because

24   you're asking for things, just waste time.  You already

25   have those documents.  Everything you asked, you have it,

Proceedings

1   even your company of my I.D., you have it.  Your private

2   investigator has it in their file and have all my court

3   history, also.

4           THE COURT:  Just if you had a document you were

5   reviewing during the deposition, just give him a copy of

6   it, they're entitled to it.

7           What's the -- you need tax returns for the

8   company, what for?

9           MR. FELSEN:  So several reasons.  I mean, first

10  of all, the claims are for fraud and conversion, so we

11  believe the tax returns are irrelevant under those

12  circumstances.  We believe that the business he was

13  operating was a sham.  We'd like to see what type of

14  income and expenses he was reporting.

15          MR. ALEXANDER:  Please, have respect.  I

16  (indiscernible) business a sham.

17          MR. FELSEN:  It was --

18          MR. ALEXANDER:  I mean it was --

19          MR. FELSEN:  Tax returns are statements made

20  under oath.  We want to be able to use it to attack his

21  credibility, to the extent that he made false

22  representations on it.  We also want to know what income

23  he was making to see how he was living.

24          MR. ALEXANDER:  What is this related -- what is

25  this related to your case?  You investigated my private

8

Proceedings

1  life.  What does it have to do with your case?  You go to

2  the IRS, you find I file taxes all the time.  I'm not

3  going to give you something you already have.  This is a

4  public record.  I mean, what does it have to do with

5  somebody in your company have stole your money, not me.

6          All the document you show me on the deposition,

7  it looks like your employee have stole you, not me.  I

8  work for Star Subaru, never.  I work for the -- the

9  Motorsports, which is presented by Douglas.  I have no

10  idea then what he is doing.  He shows me that he has

11  three four address in New Jersey.  He even mail -- you

12  mailed him a check on my address for Star Subaru -- for

13  Motorsports never been in Florida.

14          So the scam coming from your side, not from me.

15  So don't ever call my business a sham because it looks

16  like you have no idea what you're doing and you keep just

17  hitting the wrong person.  You show me a document that

18  (indiscernible) writing a checks from Star Subaru to

19  Motorsports in 1751 Mott Street (ph.) which has never

20  been there.

21          So all the document you show me is a scam on

22  your side, not my side.  I have no right to call it a

23  scam but that's how it looks like.

24          And as far as I know from newspaper, you have

25  many, many scam in the company and he's suing a lot of

9

Proceedings

 1  people and all the clients are suing you back as well for

 2  bad service, myself, for a mailing.  I know that many

 3  customers have called with the bad service.

 4          So the thing is your company you're presenting

 5  has a problem in management, not -- not my side, so don't

 6  give it to me.  I (indiscernible) piece of direct mail,

 7  that's all, a very stupid small thing.  That's all I've

 8  done.  I've never done commercial for them.  I just

 9  produce a 15-minute commercial production on not airing.

10  You keep asking me about the never been aired.  I don't

11  know if it's aired or not, it's not job.  It's your

12  company's job to air it or not.  I'm not a TV channel.

13          So it looks like you have a lack of information

14  about the whole business and you keep just hitting me the

15  wrong way.  That's what irritates me.  He has -- you've

16  very ignorant with the whole business thing and he keep

17  calling different things around and with all respect,

18  that's irritating and wasting my time.

19          THE COURT:  All right.  Let's try and stay on

20  topic.  I just want to get through this.  I have a

21  million other things to do, so let's not waste the

22  Court's time.

23          Do you have tax records for the business or can

24  you just do the form?

25          MR. ALEXANDER:  I don't have anything and the -

10

Proceedings

1 - the tax was filed and it is available on the IRS

2 through Michael Shoey (ph.).  The first thing I said,

3 Michael Shoey says no lawyer -- no accountant -- Michael

4 Shoey died the late 2017, early 2017, from cancer and I

5 couldn't get even my last return from him.  Last I filed

6 was 2016.  That's the last thing I did.

7          THE COURT:  So do the form and then they can

8 ask directly and they don't have to get it from you for

9 the business.

10          MR. ALEXANDER:  Well, have them do it, sir,

11 with all respect.  Have them just to look at my -- my

12 records in the IRS, that's all.  It's not going to help

13 them for anything.  I file taxes all the time even until

14 now but it has nothing to do with him.  It's just like he

15 has no right to ask me for private thing.  He want to get

16 it, get it.  He get it himself.  He asked my account.  He

17 went -- he sent a private investigator all over the City

18 asking me and they came to me and tell me, we ask every

19 account of yours and nobody has to say anything bad about

20 you and this is what happened and they asked me even all

21 what we have here to do is just to get Doug Filardo in

22 trouble because he stole the company and (indiscernible).

23 And he showed me that he has a hairdresser as his

24 address.  He has many other (indiscernible) --

25          THE COURT:  I don't care.  Stop going off

11

Proceedings

1   topic.  I don't want to hear this again.  You just keep

2   going over the same stuff over and over and over again.

3            I understand your defense but that's not what

4   the purpose of this conference is.  We have to deal with

5   these discovery requests.  Either you have the documents

6   or you don't.

7            MR. ALEXANDER:  I don't have, sir.

8            THE COURT:  If you don't have it --

9            MR. ALEXANDER:  I don't have it.

10           THE COURT:  -- fill out the form and they can

11   go find out from the IRS if they can get them.

12           MR. ALEXANDER:  Okay.

13           THE COURT:  Who is Nagua Youseff (ph.)?

14           MR. ALEXANDER:  This is my wife and she has

15   nothing to do with the business.  She never been in the

16   office.

17           THE COURT:  Why do you need her records?

18           MR. FELSEN:  Your Honor, that's -- the website,

19   until it was deleted recently, listed her as an executive

20   of the business.

21           THE COURT:  I don't care.  Do you have any

22   evidence that she's involved whatsoever in this claim,

23   the allegations in this case?

24           MR. FELSEN:  She's the spouse of this --

25           THE COURT:  That's not evidence that she's

12

Proceedings

1   involved.  Do you have any evidence whatsoever that she's

2   involved in any of the claims underlying this case?

3          MR. FELSEN:  She is an executive of the

4   business.  It's a -- it's a small business.  I mean,

5   there's only a few employees listed on the website and

6   she's listed as one of the executives and she's a

7   defendant in the case.

8          MR. ALEXANDER:  Sir, this is -- I put her name

9   once because she was involved in a TV show as a producer,

10  that's all.

11         THE COURT:  The fact that she is a defendant in

12  a case and listed as an officer, doesn't entitle you to

13  tax records.  What, if any, evidence do you have of her

14  direct involvement in anything related to this case?

15         MR. FELSEN:  Well, like I said, she's listed as

16  an executive.  We're going to be deposing her.

17         THE COURT:  Well, if you depose her and get

18  some information that she's actually involved in

19  something, then maybe I'll give you her tax records but

20  otherwise, I think you're stretching.

21         If all you can point to is the fact that she's

22  an executive, that's not enough.

23         Why do you need his insurance stuff?  This is

24  what he's doing now, correct?

25         MR. FELSEN:  Well, before we get into that,

13

Proceedings

1    your Honor, there was just some other -- right underneath

2    number 10, 17 is asking for bank account number for his

3    wife and then 23 asks for documents regarding her

4    position as the executive producer with the company.

5           THE COURT:  What do you mean by all -- what

6    documents?

7           MR. FELSEN:  I am sorry, your Honor?

8           THE COURT:  What does that mean, all documents?

9    What are you actually looking for?

10          MR. FELSEN:  Any documents that confirm that

11   she was the executive producer other than her being

12   listed on the website.

13          THE COURT:  Personnel records or some kind of

14   company records?  Is this a corporation or just a --

15          MR. ALEXANDER:  This is a --

16          THE COURT:  -- d/b/a?

17          MR. ALEXANDER:  This is DL -- LLDM (ph.), sir.

18   Nagua never been involved in the company, never been

19   involved anywhere, so I don't know where he got this

20   from.  I said only put your name on the company -- as an

21   advertising once because she did work in producing a TV

22   show in Tampa, that's all.

23          THE COURT:  So she was listed on the website as

24   an executive producer.

25          MR. ALEXANDER:  This is not a listing, this is

14

Proceedings

1    for awhile when she was just involved in giving an

2    opinion about TV production was in Tampa, TV commercials

3    in Tampa because she used to work Japanese TV in the back

4    as a producer.

5              THE COURT:  Uh-hum.

6              MR. FELSEN:  So your Honor, we --

7              MR. ALEXANDER:  That's all but she -- she has

8    nothing -- she works as real estate person.  She's never

9    been involved with anything with that.

10             MR. FELSEN:  Your Honor, I mean, we're not

11   required to just take Mr. Alexander's word for it.  She

12   was listed as the executive producer on the website and

13   then when we found that out, he removed it from the

14   website.

15             THE COURT:  Uh-hum.

16             MR. ALEXANDER:  Let me ask you a question.

17   What is -- what business I did with Star Subaru?  Have I

18   done any business with Star Subaru?  I never done

19   business with Star Subaru.

20             THE COURT:  Stop going on --

21             MR. ALEXANDER:  The whole -- the whole --

22             THE COURT:  Stop going over the same stuff.

23   I've heard that about 15 times since this call started.

24   I don't want to hear it again.

25             MR. ALEXANDER:  I'm sorry.

15

Proceedings

1      THE COURT:  You ran a business.  There's
2  business records.  Produce what you have regarding the
3  positions of the people in the business.  If your wife
4  had an executive position in the business, then produce
5  whatever records you have that show that, although I
6  really think you need to be more specific because I don't
7  even understand what that means, all documents.  It could
8  be anything.  Are you looking at personnel records?  Are
9  you looking at corporate, you know -- I don't know.
10  You've got to be more specific, especially for a pro se,
11  he doesn't really know what he's looking for.

12      MR. FELSEN:  Okay.  We'll modify that.

13      THE COURT:  And why do you need his current
14  licenses for insurance? What does that have to do with
15  anything?

16      MR. FELSEN:  You know, he testified he was in
17  this industry -- the advertising industry for all these
18  years and then al of the sudden, he became licensed to
19  sell insurance.  So we would like to --

20      THE COURT:  Okay.

21      MR. FELSEN:  -- find out if that's accurate.

22      THE COURT:  Why does that matter?  Now you're
23  just going off the deep end.

24      MR. FELSEN:  I mean it goes to his credibility.
25  He testified under oath that he's in the insurance

16

Proceedings

1   industry now.

2        THE COURT:  And do you have any reason to

3   disbelieve that?  Why would it go to his credibility that

4   he's in insurance now.

5        MR. FELSEN:  He testified he's a licensed

6   insurance person.  If he's not licensed, then that's a

7   lie under oath that we should be able to use against him.

8        THE COURT:  Okay.  But what indication -- I

9   don't understand where this is coming from.  Just because

10  he said it, it must be a lie?

11       MR. FELSEN:  Well, there's significant

12  allegations against him that he was involved in this

13  fraudulent scheme.

14       THE COURT:  You keep saying that and honestly,

15  I haven't seen anything.  All you keep saying is that

16  he's involved but I haven't seen a single thing that he's

17  pointed to that shows me that he's involved other than

18  doing this advertising for your employee.

19       I mean, I'm sure there's something but you

20  haven't really articulated it and the fact that he said

21  that he's in insurance now and you want to prove that he

22  lied about it, I mean, that's not really a sufficient

23  basis for asking for this stuff, unless you've got some

24  reason to think it's not because otherwise, it's

25  completely far afield of the issues in this case.

17

Proceedings

1          So give me some reason to think that this is a

2    lie and maybe I'll let you get into that stuff but as it

3    stands now, it's just completely irrelevant and I want to

4    get this case actually wrapped up.

5          MR. FELSEN:  Okay.

6          THE COURT:  Get some relevant stuff now.  Two

7    office employees that worked on Star Subaru.  These are

8    former employees of New Vision?

9          MR. FELSEN:  Yes, Mr. Alexander testified that

10   these two individuals worked on this Star Subaru account.

11   So we would like to be able to depose them, so we need

12   their contact information.

13         THE COURT:  Can you provide whatever

14   information you have on these people, their names, phone

15   numbers, addresses, whatever?

16         MR. ALEXANDER:  I have no record for them.

17   These are snow birds.  They come work for three, four

18   months and they leave.  We have recycled many people in

19   the office because Florida, that's how it is.  There's

20   too many people come and goes.

21         THE COURT:  Do you keep any --

22         MR. ALEXANDER:  They work and they go.

23         THE COURT:  -- business records of the

24   employees?

25         MR. ALEXANDER:  I don't have any business

18

Proceedings

1   records at all since I closed the company.  I don't have

2   any documents and those people just they create their own

3   contact (audio interference).

4           THE COURT:  You said the names and the

5   telephone numbers of the four companies that perform

6   mailings for New Vision Advertising.

7           MR. ALEXANDER:  Anita (ph.), this is -- what I

8   remember, she used to work in the circus and then she

9   came, she was a nice person, she worked for a while, then

10  she gone to Virginia or something.  I don't know, she

11  went to different state, so I don't keep track of those

12  people at all who worked for me.

13          They work in independent contract, they have no

14  insurance or nothing because the contract we do for them,

15  pays them commission on it.

16          MR. FELSEN:  But we're not --

17          THE COURT:  Okay.

18          MR. FELSEN:  Judge, we're not looking for

19  specific documents but to the extent he has the

20  information, whether it be on his phone or somewhere,

21  it's basically like an interrogatory where we're just

22  asking for him to give us the information, not

23  necessarily business documents.

24          THE COURT:  You need to produce any information

25  you have, no matter where, whether it's on a phone

19

Proceedings

1   contact or whatever about these employees and the

2   companies that did mailings for New Vision Advertising.

3   If the answer -- you know, if you want to do a sworn

4   answer that says that you don't have anything whatsoever

5   and don't have any of these records, you can do that but

6   -- if that's the truth, but they need a response.

7            MR. ALEXANDER:  I don't, your Honor.  I respond

8   and my answer is the same answer, I don't have any

9   record.  It's true.

10           THE COURT:  You don't have any contact

11  information in any capacity for any of these people?

12           MR. ALEXANDER:  No, sir.  I've been working in

13  insurance, the insurance license on all the states now

14  for three years and this is my focus now.

15           THE COURT:  Okay.  Cell phone records

16  establishing -- if you want him to get cell phone

17  records, you're going to have to get them from the cell

18  phone company.  I don't know how you expect to get it

19  from the defendant.

20           MR. FELSEN:  I'm sorry, I missed that.

21           THE COURT:  I said if you want to get cell

22  phone records, you're going to have to get that from the

23  cell phone company.  I don't know how you're going to get

24  that from the defendant.

25           MR. FELSEN:  Yeah, I'm amenable to an

Transcriptions Plus II, Inc.

20

Proceedings

1  authorization.  I just need to know his phone number that

2  he used and the provider.

3          THE COURT:  How did you contact Mr. Filardo?

4  Did you give a cell phone that you used?  Did you have a

5  cell phone that you used to contact Mr. Filardo?

6          MR. ALEXANDER:  I do, yeah.

7          THE COURT:  Can you give him the number and

8  tell him the provider?

9          MR. ALEXANDER:  He has my number.  he called me

10  a few times on my number.

11          THE COURT:  No, no, I'm -- the -- you have to

12  give it to the counsel.  I know he called their number,

13  that's what they want to get is any records of that.

14  They can't get (indiscernible) --

15          MR. ALEXANDER:  They called --

16          MR. FELSEN:  -- give their phone --

17          MR. ALEXANDER:  -- we used -- we used the

18  office number which is (indiscernible) that's my cell

19  number, 366-3757 and he has that number.

20          MR. FELSEN:  Your Honor, I just want to make

21  sure -- I don't know that the phone number I have, is the

22  same one he had back then, so I just want to make sure

23  that he provides me with that information for the period

24  of time that is covered by the allegations in the

25  complaint.

21

Proceedings

1    MR. ALEXANDER:  We called -- sir, we called

2    Douglas at his -- his office number --

3    THE COURT:  Okay.

4    MR. ALEXANDER:  -- which is a Star number, is

5    whatever number he has, 718, I don't remember the number.

6    The Star Subaru's main number, this is the number he

7    calls us and like I said before, he instruct me to call

8    him only, not to speak to anybody else in the company and

9    the first invoice was made to his company which is -- he

10   said was Motorsports, he never told me that's his own

11   company.

12   THE COURT:  I think they're asking for what

13   number you used to contact him, correct?

14   MR. FELSEN:  Yeah, we just want to --

15   MR. ALEXANDER:  Yeah.

16   MR. FELSEN:  -- know during that period, what

17   number he used when he called Mr. Filardo and who his

18   provider was at that time.

19   MR. ALEXANDER:  That Star Subaru number, that's

20   the one --

21   THE COURT:  No, no, no.

22   MR. ALEXANDER:  -- we called --

23   THE COURT:  Your number.

24   MR. ALEXANDER:  -- his office number.

25   THE COURT:  Okay.  But what number did you use?

22

Proceedings

1  What phone did you use to talk to him?

2           MR. ALEXANDER:  My office number, my office

3  phone --

4           THE COURT:  What --

5           MR. ALEXANDER:  -- that one.

6           THE COURT:  -- (indiscernible) number?

7           MR. ALEXANDER:  That's 366-3757.

8           MR. FELSEN:  It --

9           MR. ALEXANDER:  941 -- 941-366-3757.

10          MR. FELSEN:  Did you get that down, Jeremy?

11          MR. KOUFAKIS:  941-366-3757.

12          MR. FELSEN:  Right.

13          THE COURT:  And what's the provider or is it a

14  phone --

15          MR. ALEXANDER:  That was -- that was -- first

16  was Verizon, then we changing -- we change the provider

17  with Comcast.

18          MR. FELSEN:  Was it the same number, even when

19  you changed the --

20          MR. ALEXANDER:  Yes.  Yes, of course, we had

21  changed provider and keep the number.

22          THE COURT:  Bank account number for New

23  Visions' Wells Fargo account.  Did New Visions have a

24  Wells Fargo account?

25          MR. ALEXANDER:  It has, yeah and he has the

23

Proceedings

1  account and he a copy of the business already.  he show

2  it to me on the deposition file.

3          MR. FELSEN:  Your Honor, we clarified that we

4  meant -- we do have Wells Fargo but Mr. Alexander also

5  testified that they also had a SunTrust Bank account.

6  That's what we meant by 18, we were looking for the bank

7  account number for SunTrust Bank.

8          MR. ALEXANDER:  That was like ten years ago and

9  I have no record of it at all.  I don't even remember if

10  I have one.  I had one, yeah but I don't remember it --

11  anything about it.

12          THE COURT:  You don't have any records of any

13  recollection of the SunTrust account number?

14          MR. ALEXANDER:  No, Judge, I don't.

15          THE COURT:  And how long did you have that?

16          MR. ALEXANDER:  I think for just a year or so.

17          THE COURT:  When, roughly.

18          MR. ALEXANDER:  I don't remember.  To be

19  honest, it's -- it's not more than -- it's almost a year

20  or so, that's what I remember.  I -- I might be wrong but

21  I'm not sure.

22          THE COURT:  You don't have any way of finding

23  out what that old bank account number was?

24          MR. ALEXANDER:  I can't.  I don't.  I don't

25  have any records.

24

Proceedings

1          THE COURT:  What was the relevant time period

2   in this case, 2000- what?

3          MR. KOUFAKIS:  I think from 2008 --

4          MR. FELSEN:  2008 through 2016, I believe.

5          THE COURT:  Was this during the same time

6   period that you had that account?

7          MR. ALEXANDER:  You're asking me now, that was

8   -- I don't remember but it was like years ago, before

9   Wells Fargo, like I think from '09 or some -- '09 to '10,

10  this period.

11         THE COURT:  Was it under the name New Visions?

12         MR. ALEXANDER:  I don't remember.  I think NV

13  Production.  New Visions is a fictitious name of the

14  company for the -- for Florida because NV Production was

15  created in New Jersey.  So you have the right to have a

16  fictitious name and you register that name, that's how.

17         THE COURT:  That wasn't a name of some other

18  entity?

19         MR. ALEXANDER:  No.

20         THE COURT:  I don't understand.

21         MR. ALEXANDER:  Sorry?

22         THE COURT:  Okay.  Hold on one second.

23  (Pause)

24         THE COURT:  Sorry about that.  Okay.

25         Give them whatever information you can about

25

Proceedings

1  this account, whatever name it was under, whatever -- the

2  dates as close to -- as you can recall and maybe they can

3  track it down that way, even if they don't have the

4  number.

5      MR. ALEXANDER:  If I find that information, I

6  will give it to them.

7      THE COURT:  Whatever you remember about the

8  approximate dates of when you had the account --

9      MR. ALEXANDER:  Okay.

10      THE COURT:  -- the name that it would've been

11  under.

12      MR. ALEXANDER:  Sure.

13      THE COURT:  Documents related to any lawsuit or

14  criminal proceedings.  Were you involved in -- did you

15  ask them about lawsuits in criminal proceedings --

16      MR. FELSEN:  Yes.

17      THE COURT:  -- previously?

18      MR. FELSEN:  He began to testify about it and

19  then he told us about certain things and then he stopped

20  and wouldn't tell us about a conviction that we believe

21  he had involving dishonesty.

22      MR. ALEXANDER:  I never have any conviction.  I

23  told you that several times and you can look up my

24  records, the public records.  When you sign for to be a

25  licensed insurance agent, you can never get a license

26

Proceedings

1  unless -- if you have any conviction and you know that,

2  so --

3          MR. FELSEN:  We have reason to believe he has a

4  conviction for theft.

5          MR. ALEXANDER:  Okay.  Maybe because you have a

6  different attitude, so you have that belief, so I forgive

7  you for this.

8          THE COURT:  Do you have -- forget about

9  convictions.  Were you actually involved in any criminal

10  proceedings?

11          MR. ALEXANDER:  No, sir.

12          THE COURT:  Of the various (indiscernible) --

13          MR. ALEXANDER:  I was arrested and I explained

14  that to him but I never been convicted, so --

15          THE COURT:  Were you prosecuted as part of that

16  case?

17          MR. ALEXANDER:  I was not prosecuted, no.

18          THE COURT:  Did they (indiscernible) --

19          MR. ALEXANDER:  (Indiscernible), not ever.

20          THE COURT:  In other words, did they charge you

21  with something and then it was --

22          MR. ALEXANDER:  Never, sir.

23          THE COURT:  -- dismissed?

24          MR. ALEXANDER:  And it's in my public records,

25  I have no charge or no conviction.

Proceedings

1    MR. FELSEN:  Your Honor, I believe, if my

2 memory is correct, I believe he testified that he had to

3 hire a criminal attorney.  So we would like to have the

4 information for that criminal attorney, so if he's not

5 going to produce it to us, we could subpoena the

6 attorney.

7    THE COURT:  Give him the name of the attorney,

8 if not a conviction that's unlike the --

9    MR. ALEXANDER:  I never say -- I never say

10 criminal attorney.  I never say such a thing.  I think

11 you make up those things yourselves.  I never say I have

12 a -- a criminal attorney.  I don't know where you get

13 this from.

14    THE COURT:  Okay.  You were arrested.

15    MR. ALEXANDER:  Okay.

16    THE COURT:  Did you ever hire an attorney in

17 that case?

18    MR. ALEXANDER:  Yeah, it was a DUI and I told

19 them that.

20    THE COURT:  That's the only criminal matter

21 you've been involved in?

22    MR. ALEXANDER:  It was two times, yeah.

23    THE COURT:  And that's not what you're looking

24 for, I assume.

25    MR. FELSEN:  No, your Honor.

28

Proceedings

1          MR. ALEXANDER:  One in Florida -- one in New

2    Jersey, one in Florida.  It was a long time ago.

3          MR. FELSEN:  Your Honor, I believe he was

4    arrested for theft involving Target.

5          MR. ALEXANDER:  Uh-hum.  I was convicted?

6          THE COURT:  You were arrested for some kind of

7    theft at a Target store?

8          MR. ALEXANDER:  That was not a theft.  That was

9    an argument with the -- with the employee.  That was not

10   a theft.  That was the police came.

11         THE COURT:  Okay.

12         MR. ALEXANDER:  It was a case and there was a

13   return of merchandise.  So they call it theft or whatever

14   but then I was not convicted because that was not proved

15   anything, I didn't take anything.

16         THE COURT:  Okay.  So there was a case, you

17   said but it wasn't -- so did you have an attorney in that

18   case?

19         MR. ALEXANDER:  Yes.

20         THE COURT:  So just give him the name and the

21   number for your attorney in that case and they can see if

22   it's anything that they want to --

23         MR. ALEXANDER:  Okay.  Okay.  With all respect,

24   I mean, he has also the conclusion that was hold -- was -

25   - was held with no conviction, so --

Proceedings

1        THE COURT:  Well, then it's unlikely that

2   they're going to be able to use it at trial or anything

3   but at least give them the name for the attorney and let

4   them find out for themselves exactly what it is.

5        MR. ALEXANDER:  Okay.

6        THE COURT:  And the last thing is screenshots

7   you took during your deposition.  What is this about

8   exactly?

9        MR. FELSEN:  So your Honor, during the

10  deposition, he was using his camera, even though I told

11  him not to on his phone, and he was taking pictures of

12  certain documents that we were using during the

13  deposition.  So we would like copies of the pictures that

14  he took during the deposition.

15        MR. ALEXANDER:  You want a copy of a document

16  you show it to me?  I don't believe it.

17        THE COURT:  They want to know what you were

18  taking pictures of basically.

19        MR. ALEXANDER:  I took pictures of the -- the -

20  - the people on the -- I didn't know this was legit or

21  not because he just surprised me, so I took a picture of

22  them and I threw it away, of them sitting down.  Some

23  people showed themselves, like one of the ladies and

24  himself and the other one was blind picture -- was black,

25  couldn't see who was that and then I took a picture of

30

Proceedings

1   the million-dollar-and-change he show me that -- a

2   document that Star Group to Douglas, which I had nothing

3   to do with it.

4          So these are things I never seen before and

5   this is all -- then he said don't take a picture, so I

6   didn't take a picture but although I have the right to

7   take a -- a screenshot of what they -- what they showing

8   me and these are things we have already, so I didn't take

9   a -- a screenshot of something illegal or so.

10          THE COURT:  So what pictures you took -- the

11   screenshots that you took?  If you have the screen --

12   those pictures, just send him a copy of the pictures that

13   you took.

14          MR. ALEXANDER:  It's a screenshot from a

15   document he showed me and then when he said that, I threw

16   them in the trash though.

17          THE COURT:  What do you mean in the trash?  I

18   thought you took them on your camera phone.

19          MR. ALEXANDER:  No, it's not my camera phone.

20   A screenshot, you do it in the computer like you have the

21   -- the computer screen and then you hit the command Alt4

22   and you take a screenshot, that's a screenshot, not a

23   camera phone.

24          THE COURT:  Is that what you're talking about?

25   I thought you were talking about a -- are you talking

31

Proceedings

1   about taking screenshots on the computer during the

2   deposition?  Is that what you were looking for, counsel?

3              MR. FELSEN:  I thought it was -- he was using

4   his phone to take pictures during the deposition.

5              MR. ALEXANDER:  No, I did not.

6              MR. KOUFAKIS:  I'll have to look.

7              MR. FELSEN:  It was video graph.  His

8   deposition was videotaped, so we can review the videotape

9   and have that confirmed.

10             THE COURT:  Okay.

11             MR. ALEXANDER:  But what does this have to do

12  -- with all respect, what it has to do with anything?

13  Because this is just weird for me to know it, just --

14             THE COURT:  Look, if you took pictures with

15  your phone, give him the pictures.  If you took

16  screenshots, give him the screenshots.

17             MR. ALEXANDER:  I didn't take a picture of my

18  phone.  It's the screenshot and it shows the rest, so I

19  don't have anything.  I put it in the trash.

20             THE COURT:  All right.  I'm ordering to produce

21  them.  If you tell me that you destroyed them, then

22  they're destroyed and if they want to make a motion for

23  spoliation, they can.  I don't think it's going to go

24  anywhere but do what you're going to do but I am ordering

25  you to produce them.  So if you're telling me on the

Proceedings

1    record that you don't have them, I think we should put

2    them --

3            MR. ALEXANDER:  I put them in the trash, your

4    Honor, so I can't -- I can't retrieve my trash and I find

5    them but I am not sure why that --

6            THE COURT:  Look in your trash and see if you

7    still have them.  If you do, turn them over.

8            MR. ALEXANDER:  Okay.

9            THE COURT:  If you don't, then let them know

10   that you destroyed them.

11           MR. ALEXANDER:  Sure.  Yeah, absolutely.  It

12   doesn't mean anything.  It doesn't (indiscernible),

13   right?

14           THE COURT:  All right.

15           MR. ALEXANDER:  I'll try to find them in the

16   trash, yeah.

17           THE COURT:  All right.  Well, they'll do what

18   they're going to do.  So I think that's everything that's

19   discussed in the motion.  Other than this stuff, what

20   else is left in discovery?

21           MR. FELSEN:  From the last conference, your

22   Honor, you granted our motion to continue his deposition,

23   so we --

24           THE COURT:  Okay.

25           MR. ALEXANDER:  -- once we get all the

33

Proceedings

1  information that we discussed today, we can depose him

2  again.

3          THE COURT:  All right.  So why don't we say 30

4  days to --

5          MR. ALEXANDER:  Your Honor, with all respect, I

6  don't have seven hours to spend with those guys on

7  something I -- I can't spend that time anymore, seven

8  hours last time, he surprised me and he never told me

9  that and to answer the same question, I don't have time

10  to do that.  I'm sorry.

11          MR. FELSEN:  Your Honor, we didn't take seven

12  hours last time and we're not planning on taking --

13          MR. ALEXANDER:  Yes, you did.  You did.  You

14  did take seven hours exactly.

15          THE COURT:  Okay.  Well, I don't think they're

16  asking for seven hours this time.  I think there was a

17  limited deposition just to cover the stuff that wasn't

18  done correctly in the first one.

19          So why don't we say 30 days to produce the

20  additional documents and then you can schedule the

21  deposition and we'll go from there.

22          MR. FELSEN:  Your Honor, just one more -- in

23  the second to last paragraph in my letter, I just -- I

24  referenced several responses where he just says he's got

25  no -- he doesn't have any related document to previous

34

Proceedings

1   business and it just seems to me that he just kind of

2   said that without -- I don't know that he actually made

3   any effort to locate documents.  So I just want to make

4   sure that he's actually properly stated that he doesn't

5   have documents and that he's just not repeating that

6   without actually conducting a search.

7          THE COURT:  Did you look through any documents

8   and files that you have?

9          MR. ALEXANDER:  Yes, sir.  I don't have

10  anything to look for.  I destroyed documents.  I told him

11  that before in writing that I donate everything to the

12  church and the furniture and the office and we threw all

13  the document away.  I have no expectation for -- to keep

14  any of those documents because they (indiscernible) and I

15  don't have -- no longer have the business, I do something

16  different.

17         So if I have any document, I give it to him

18  because I don't care.  I have nothing done, gone.  So I

19  -- I repeat that many times but I do ask you, your Honor,

20  please have him speak politely to me sometimes because

21  he's very irritating and he keeps saying a scam or a sham

22  and this is -- I refuse this very much.

23         THE COURT:  Okay.  Let's just be civil.  Let's

24  try to get through this.  So produce the additional

25  documents and --

35

Proceedings

1           MR. ALEXANDER:  Thank you.

2           THE COURT:  -- you'll do your deposition --

3    let's reconvene for another telephone conference in a few

4    -- maybe after the holidays and hopefully at that point,

5    we'll see where things stand.  Maybe January 22nd?

6           MR. ALEXANDER:  Okay.

7           MR. FELSEN:  That works.

8           MR. ALEXANDER:  What time?

9           THE COURT:  Morning of afternoon better?

10          MR. ALEXANDER:  Afternoon, Judge.

11          MR. FELSEN:  That's fine.

12          THE COURT:  All right.  Why don't we say 3

13   o'clock.

14          MR. ALEXANDER:  Okay.

15          MR. FELSEN:  Okay.  Thank you, your Honor.

16          THE COURT:  All right.  Have a good day

17   everyone.

18          MR. FELSEN:  Thank you.

19          THE COURT:  Talk to you in January.  Bye.

20                  (Matter Concluded)

21                       -o0o-

22

23

24

25

36

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **20th** day of **March** 2021.

*Linda Ferrara*
Linda Ferrara

AAERT CET 656
Transcriptions Plus II, Inc.