**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x
**STAR AUTO SALES OF QUEENS LLC**
**d/b/a STAR SUBARU,**

                  Case No.:
                  1:19-cv-06791 (RPK) (ST)

                **Plaintiff,**

    -against-                                  **AMENDED COMPLAINT**

**HANIE ISKANDER a/k/a "John Alexander"**
**AND NAGWA YOUSEIF a/k/a "Nagwa F Youseif,**

                **Defendants.**
-------------------------------------------------------------------------x

Plaintiff, Star Auto Sales of Queens LLC d/b/a Star Subaru ("Star Subaru" or "Plaintiff") brings this Complaint by and through its attorneys, Milman Labuda Law Group PLLC, against Defendants Hanie Iskander a/k/a John Alexander ("Alexander") and Nagwa Youseif a/k/a Nagwa F Youseif ("Youseif") (collectively, "Defendants") in the above-captioned action and hereby alleges as follows:

## NATURE OF ACTION

1. Plaintiff brings this Complaint against Defendants for (1) fraud and deceit; (2) aiding and abetting of fraud; (3) civil conspiracy of fraud; (4) unjust enrichment; (5) aiding and abetting breach of fiduciary duty; (6) conversion; (7) civil conspiracy of conversion; and (8) breach of contract.

## JURISDICTION AND VENUE

2. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 since the controversy involves citizens of different states and the value of the amount in controversy exceeds $75,000, exclusive of attorney' fees, costs and interest.

3. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2). At all times material hereto, Plaintiff and Defendants operated, conducted, engaged in, and/or carried on a business or business venture in this state. There is the requisite nexus between the business and this action and Defendants engaged in substantial and not isolated activity within New York. At all times material hereto, a substantial portion of the events giving rise to this action arose in this judicial district.

## PARTIES

4. Plaintiff, Star Subaru is a limited liability company formed in the state of New York.

5. Star Subaru is a car dealership with its principal place of business and new car dealership is located at 206-26 Northern Boulevard in Bayside, New York.

6. Defendant, Hanie Iskander a/k/a John Alexander ("Alexander") is a natural person who resides at 8259 Enclave Way, Unit 103, Sarasota, Florida 34243.

7. Defendant, Nagwa Youseif a/k/a Nagwa F. Youseif ("Youseif") is a natural person who resides at 8259 Enclave Way, Unit 103, Sarasota, Florida 34243.

## FACTS

8. Alexander operated two (2) entities: (1) New Vision Advertising ("New Vision") and (2) NV Productions ("NV"). NV was a Limited Liability Partnership that was started in New Jersey before moving its principal place of business to 1751 Mound St. Ste 208, Sarasota, Florida 34236. New Vision is a sole proprietorship with it's principal place of business located at 1751 Mound St. Ste 208, Sarasota, Florida 34236 while it was in operation.

9. Alexander is the founder, executive director, and creative director of NV and New Vision.

2

10. NV and New Vision are unincorporated businesses that claim to provide marketing and advertising services. On New Vision's website, it states that it delivers "a wide variety of creative services ranging from web design production to print advertising and direct marketing." It also advertises as being able to "create cutting-edge marketing solutions for small to large sized companies."

11. Youseif is the executive producer of NV and New Vision.

12. Youseif works with Alexander and is in a relationship with Alexander. Youseif resides with Alexander.

13. From in or around November 25, 2008 until in or around November 1, 2016, Star Subaru hired and paid Defendants to provide marketing and advertising services.

14. Defendants failed to perform any marketing and advertising services for Star Subaru.

15. Instead, as fully outlined below, Defendants generated fake adertisements and made misrepresentations to Star Subaru that they placed these advertisements with local television/cable stations and circulated mailer advertisements. However, Defendants never placed or circulated any such advertisements but invoiced and collected fees from Star Subaru for these unplaced advertisements.

16. As the sole proprietor, Alexander was doing business and using NV and New Vision as a vehicle to commit fraud against Star Subaru. Alexander is directly responsible for any fraud committed by NV and New Vision and is responsible for any fraud committed by NV and New Vision.

17. Youseif assisted Alexander with the fraud while she was the executive producer of NV and New Vision.

18. In addition, an employee of Star Subaru, Douglas Filardo ("Filardo"), also assisted Defendants in this fraud.

## DEFENDANTS' ILLEGAL AND IMPROPER CONDUCT

19. Star Subaru employed Filardo as a sales manager from in or around March 2006 until in or around November 2017.

20. As the sales manager, Filardo specifically oversaw sales operations (including the advertising) of Star Subaru since it began operating in or around March 2006 until he quit in or around November 2017.

21. As part of his sales responsibilities, Filardo, *inter alia*, hired Defendants to perform advertising services on behalf of Star Subaru.

22. Plaintiff (through Filardo) and Defendant Alexander entered into an agreement whereby Defendants would perform advertising services and Star Subaru would pay for those services.

23. At this time and throughout the entire period Defendants performed advertising services for Star Subaru, Defendants had actual knowledge that Filardo was a Sales Manager for Star Subaru, and a fidicuary of Star Subaru.

24. Instead of hiring a legitimate advertising firm, Filardo schemed with Defendants to defraud Star Subaru by invoicing Star for advertising that was never actually performed.

25. The scheme was not complicated. It worked as follows:

   a. Filardo created a business, Subaru Motorsports d/b/a Motorsports Advertising (a sole proprietorship) ("Motorsports") which was used as an intermediary between Star Subaru and Defendants;

4

b. Star Subaru had no knowledge that Motorsports was a sole proprietorship operated by Filardo;

c. Star Subaru hired Motorsports to manage, in part, its advertising;

d. Motorsports, in turn, hired Defendants to perform advertising services for Star Subaru;

e. Defendants created fake invoices for advertising services that were never actually provided to Star Subaru;

f. Star Subaru paid Motorsports as per Defendants' invoices for Defendants' work; and

g. Motorsports and Defendants split the income generated by these false advertisements and false invoices.

26. Upon information and belief, Youseif knew of Alexander's scheme and substantially assisted Alexander in the fraud by creating false advertisements she knew would never be used and generating bogus invoices in order to receive payment for no services rendered by NV and New Vision.

27. In furtherance of the scheme, Filardo told Defendants not speak with Michael Koufakis ("Koufakis"), the dealer principal for Star Subaru or they would lose Star Subaru's business.

28. On February 2, 2018, Alexander made a materially false representation when he texted Koufakis that he kept all the invoices for work through 2011 and anything older was on an "old drive". On February 5, 2018, Alexander made the same fraudulent misrepresentaiton to Koufakis in another attempt to be paid additional money. These statements are materially false because no advertising was ever performed and none of these documents actually ever existed.

5

29. Furthermore, Filardo entered New Vision's Tax Identification Number as the Tax Identification Number for Motorsports in Star Subaru's Dealership Management System ("DMS") as a means to disguise and willfully conceal this scheme from Star Subaru.

30. Filardo deposited the money he received from Star Subaru through this scheme into a Motorsports bank account belonging to Filardo. After depositing the money, Filardo wired this money from Motorsports to pay the invoices issued by Defendants.

31. In reality, Defendants provided zero advertising services for Star Subaru.

32. For example, Defendants created fake advertising mailers for Star Subaru which were never distributed.

33. As an example, the marketing production company listed on one of the mailers is Velaasis, located at 101 Targeting Center, Windsor, Connecticut 06093. Upon information and belief, this company and address do not exisit.

34. There is another marketing production company used by many auto dealers which has a silmilar name called, Valassis, which is located at 235 Great Pond Drive, Windsor, CT 06095.

35. Moreover, upon information and belief, an affiliate of Valassis, RedPlum.com, is or was located nearby at "1 Targeting Center."

36. Defendants used a similar name and address as a means to further disguise their fraud on Plaintiff.

37. In addition to the Velaasis mailer, Alexander made many other materially false statements by producing advertisement mailers to Star Subaru that he stated were mailed. One copy of each fraudulent mailer was either mailed or emailed to Star Subaru to make it appear as if Defendants were sending these mailers out despite they were never, in fact, mailed. Star Subaru

also received fake invoices and fraudulent postage receipts making it appear as if the mailers were mailed.

38. The approximate dates Star Subaru received these fraudulent mailers, invoices, and postage receipt that it relied on includes but is not limited to: February 6, 2014; September 26, 2014; January 3, 2015; January 15, 2015; February 15, 2015; June 24, 2013; July 2, 2013; December 1, 2013; August 15, 2015; September 25, 2015; Novembre 27, 2015; October 7, 2016.

39. Upon information and belief, Star Subaru also received fake invoices corresponding to each of the checks Star Subaru issued to Motorsports Advertising. The dates of the checks Star Subaru issued to Motorsports Advertising as payment for work performed by New Vision includes but is not limited to:

    a. April 4, 2011; May 6, 2011; May 24, 2011; May 24, 2011; June 1, 2011; June 22, 2011; July 2, 2011; July 12, 2011; July 15, 2011; July 20, 2011; August 1, 2011; August 1, 2011; August 15, 2011; September 1, 2011; September 7, 2011; September 3, 2011; September 16, 2011; October 1, 2011; October 10, 2011; October 13, 2011; October 18, 2011; November 1, 2011; November 1, 2011; November 10, 2011; December 1, 2011; December 2, 2011; December 14, 2011; December 14, 2011; January 1, 2012; January 6, 2012; January 20, 2012; February 1, 2012; February 4, 2012; February 8, 2012; February 17, 2012; February 21, 2012; March 1, 2012; March 5, 2012; March 16, 2012; March 26, 2012; April 2, 2012; April 6, 2012; April 16, 2012; May 2, 2012; May 9, 2012; May 15, 2012; June 1, 2012; June 12, 2012; June 15, 2012; July 2, 2012; July 14, 2012; July 25, 2012; July 28, 2012; August 1, 2012; August 3, 2012; August 10, 2012; August 15, 2012; August 24, 2012; August 28, 2012; September 2, 2012; September 14, 2012;

September 14, 2012; September 15, 2012; October 1, 2012; October 15, 2012; October 24, 2012; November 1, 2012; November 6, 2012; December 2, 2012; December 7, 2012; January 3, 2013; January 8, 2013; January 14, 2013; January 28, 2013; February 1, 2013; February 8, 2013; February 19, 2013; February 20, 2013; March 1, 2013; March 4, 2013; March 15, 2013; March 19, 2013; April 1, 2013; April 3, 2013; April 8, 2013; April 15, 2013; May 1, 2013; May 14, 2013; May 20, 2013; June 1, 2013; June 4, 2013; June 7, 2013; June 14, 2013; June 19, 2013; June 21, 2013; July 1, 2013; July 3, 2013; July 15, 2013; August 1, 2013; August 14, 2013; September 1, 2013; September 9, 2013; October 1, 2013; November 1, 2013; November 4, 2013; December 1, 2013; December 10, 2013; December 27, 2013; January 9, 2014; February 4, 2014; February 21, 2014; March 3, 2014; March 28, 2014; April 2, 2014; April 15, 2014; May 5, 2014; May 20, 2014; June 3, 2014; June 17, 2014; July 1, 2014; August 1, 2014; August 16, 2014; September 2, 2014; September 15, 2014; October 3, 2014; October 15, 2014; October 28, 2014; November 3, 2014; November 19, 2014; December 2, 2014; December 23, 2014; January 7, 2015; January 8, 2015; January 18, 2015; February 2, 2015; February 16, 2015; March 3, 2015; April 1, 2015; April 10, 2015; May 1, 2015; May 2, 2015; May 6, 2015; June 3, 2015; July 1, 2015; August 2, 2015; August 5, 2015; September 1, 2015; September 15, 2015; September 29, 2015; October 13, 2015; November 2, 2015; December 1, 2015; December 2, 2015; January 4, 2016; February 2, 2016; February 3, 2016; March 2, 2016; April 2, 2016; April 11, 2016; May 3, 2016; May 13, 2016; June 2, 2016; June 25, 2016; July 26,

    2016; August 1, 2016; September 2, 2016; September 27, 2016; October 7, 2016;

    November 1, 2016.

  40. Additionally, on New Vision's Facebook page, website, and on YouTube, there is a video commerical New Vision allegedy made to broadcast on Chinese TV channels/networks. Instead, New Vision pirated this video clip from another Subaru Chinese commercial and simply added Star Subaru's information at the end of the commercial. New Vision did this on multiple occasions with commercials in various languages.

  41. These commercials were never aired on any channel.

  42. These fraudulent commericals were created in or around June 25, 2013 and were sent to Star Subaru via email.

  43. Defendants knew their representations about the advertisements were false in order to induce Star Subaru to pay Defendants.

  44. Plaintiff's reliance on Defendants' represenations were justifiable given the lengths Defendants went to cover up their misrepresentations.

  45. As a result of Defendants' conduct, Plaintiff suffered $1,419,874.83 in damages, which is specifically identifiable.

  46. Star Subaru's Dealership Management System ("DMS") reflects that from November 25, 2008 to March 31, 2011, it paid Motorsports Advertising $303,519.00 via checks. From April 1, 2011 to November 1, 2016, Star Subaru paid Motorsports Advertising $1,116,355.83 via checks. All of these checks/monies were deposited into Motorsports Advertising's JPMorgan Chase's bank account ending in 4975. Motorsports Advertising then issued at leased two (2) checks to NV Production with the combined total of $7,968.25 which were both deposited into NV Production's Suntrust bank account. Motorsports Advertising also made twenty-two (22) wire transfers from its

JPMorgan Chase's bank account ending in 4975 to NV Production's Suntrust bank account from February 23, 2011 to May 3, 2012, in the amount of $83,300.00. Motorsports Advertising made an additional 138 wire transfers from its JPMorgan Chase's bank account ending in 4975 to New Vision Advertising's Wells Fargo bank account eding in 4902 from June 18, 2012 to September 1, 2017, in the amount of $362,216.50.

## AS AND FOR A FIRST CLAIM FOR RELIEF

### Fraud and Deceit

47. Plaintiff repeats and re-alleges each and every allegation contained in the complaint as if fully set forth herein.

48. Defendants made material false representations to Plaintiff by providing fake invoices, mailers, postage receipts, and commericals to Star Subaru to make Star Subaru believe that it was receiving advertising when in reality, it was not.

49. Defendants intended to defraud Plaintiff so they could receive money without paying for any of the costs associated with mailers (i.e. printing and postage), along with paying a company for adverting time on television.

50. Plaintiff reasonably relied upon the representations made by Defendants and were damaged as a result of relying on these fraudulent invoices, mailers, postage receipts, and commericals.

51. Accordingly, Defendants committed fraud and deceit against Plaintiff; and as a result, Plaintiff was injured in the amount of $1,419,874.83, which is specifically identifiable.

## AS AND FOR A SECOND CLAIM FOR RELIEF

### Aiding and Abetting of Fraud (Youseif only)

52. Plaintiff repeats and re-alleges each and every allegation contained in the complaint as if fully set forth herein.

53. Defendant Youseif knew of Defendant Alexander's scheme to defraud Plaintiff and substantially assisted Alexander in the fraud.

54. As a result, Plaintiff was injured.

### AS AND FOR A THIRD CLAIM FOR RELIEF

### Civil Conspiracy of Fraud

55. Plaintiff repeats and re-alleges each and every allegation contained in the complaint as if fully set forth herein.

56. There was an agreement between Defendants to defraud Plaintiff.

57. As a result, Plaintiff was injured.

### AS AND FOR A FOURTH CLAIM FOR RELIEF

### Unjust Enrichment

58. Plaintiff repeats and re-alleges each and every allegation contained in the complaint as if fully set forth herein.

59. Defendants were enriched by their fraud at Plaintiff's expense and detriment.

60. As a result, Plaintiff was injured.

61. It is against equity and good consciousness to permit Defendants to retain monies they received from Plaintiff.

### AS AND FOR A FIFTH CLAIM FOR RELIEF

### Aiding and Abetting Breach of Fiduciary Duty

62. Plaintiff repeats and re-alleges each and every allegation contained in the complaint as if fully set forth herein.

63. Defendants had actual knowledge throughout the period that Defendants were providing advertising services to Plaintiff and that Filardo (as a sales manager) was a fiduciary to Plaintiff.

64. Defendants knowingly participated in the fraud with Filardo and aided and abetted in the breach of his fiduciary duties.

65. As a result, Plaintiff was injured.

## AS AND FOR A SIXTH CLAIM FOR RELIEF

### Conversion

66. Plaintiff repeats and re-alleges each and every allegation contained in the complaint as if fully set forth herein.

67. Through their scheme, Defendants intentionally and without authority took property belonging to Plaintiff and interfered with Plaintiff's right of possession to its property.

68. As a result of Defendants' conduct, Plaintiff suffered $1,419,874.83 in damages.

69. This amount is specifically identifiable because Star Subaru's DMS reflects that from November 25, 2008 to March 31, 2011, it paid Motorsports Advertising $303,519.00 via checks. From April 1, 2011 to November 1, 2016, Star Subaru paid Motorsports Advertising $1,116,355.83 via checks. All of these checks/monies were deposited into Motorsports Advertising's JPMorgan Chase's bank account ending in 4975. Motorsports Advertising then issued at leased two (2) checks to NV Production with the combined total of $7,968.25 which were both deposited into NV Production's Suntrust bank account. Motorsports Advertising also made twenty-two (22) wire transfers from its JPMorgan Chase's bank account ending in 4975 to NV Production's Suntrust bank account from February 23, 2011 to May 3, 2012, in the amount of $83,300.00. Motorsports Advertising made an additional 138 wire transfers from its JPMorgan Chase's bank account ending

in 4975 to New Vision Advertising's Wells Fargo bank account eding in 4902 from June 18, 2012 to September 1, 2017, in the amount of $362,216.50.

70. As a result, Plaintiff was injured.

71. Accordingly, Defendants committed fraud and deceit against Plaintiff; and as a result, Plaintiff was injured in the amount of $1,419,874.83, which is specifically identifiable.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF

### Civil Conspiracy of Conversion

72. Plaintiff repeats and re-alleges each and every allegation contained in the complaint as if fully set forth herein.

73. Defendants had an agreement to defraud Plaintiff and intentionally acted on that agreement by creating false invoices for advertisements that were never placed.

74. As a result, Plaintiff was injured.

## AS AND FOR AN EIGHTH CLAIM FOR RELIEF

### Breach of Contract (Alexander only)

75. Plaintiff repeats and re-alleges each and every allegation contained in the complaint as if fully set forth herein.

76. Plaintiff and Defendant Alexander (through his sole proprietorships, NV and New Vision) entered into an agreement whereby Defendant would provide advertising services to Plaintiff in exchange for compensation.

77. Plaintiff paid for such services.

78. However, Defendant breached his contract by failing to provide advertising services as agreed to for Plaintiff.

79. As a result, Plaintiff was injured.

**WHEREFORE**, by reason of the foregoing, Plaintiff prays for a judgment against Defendants as follows:

1. On the first claim for relief for an order awarding damages in an amount that may be determined upon the trial in this action.

2. On the second claim for relief for an order awarding damages in an amount that may be determined upon the trial in this action.

3. On the third claim for relief for an order awarding damages in an amount that may be determined upon the trial in this action.

4. On the fourth claim for relief for an order awarding damages in an amount that may be determined upon the trial in this action.

5. On the fifth claim for relief for an order awarding damages in an amount that may be determined upon the trial in this action.

6. On the sixth claim for relief for an order awarding damages in an amount that may be determined upon the trial in this action.

7. On the seventh claim for relief for an order awarding damages in an amount that may be determined upon the trial in this action.

8. On the eighth claim for relief for an order awarding damages in an amount that may be determined upon the trial in this action.

9. For an order awarding Plaintiff pre and post judgment interest.

10. For an order awarding Plaintiff's attorney's fees.

11. For such other and further relief as this court deems just and proper.

**Plaintiff demands a trial by jury of the within action of all issues so triable.**

Dated: Lake Success, New York
      Dated: April 13, 2022

```
```

/s/
Joseph M. Labuda, Esq.
Jamie S. Felsen, Esq.
MILMAN LABUDA LAW GROUP PLLC
*Attorneys for Plaintiff*
3000 Marcus Avenue, Suite 3W8
Lake Success, New York 11042
516-328-8899
joe@mllaborlaw.com
jamie@mllaborlaw.com

15